1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAULO EUGENE GUINN,                      Case No. 1:10-cv-00320 LJO SKO

12            Plaintiff,                      ORDER ON DEFENDANTS' MOTION FOR
                                              SUMMARY JUDGMENT
13        vs.
                                              (Doc. 30)
14   J STURM, et al.,

15            Defendants.

16   _____/

17        This matter comes before the Court on the motion for summary judgment filed by Defendants

18   County of Mariposa ("County"), Sheriff Brian Muller ("Sheriff Muller"), Jail Officer Athena Bigham

19   ("Officer Bigham"), and Deputy Justin Sturm ("Deputy Sturm").  The defendants move for summary

20   judgment on all claims asserted by Plaintiff Paulo Eugene Guinn ("Mr. Guinn") in this action: the use

21   of excessive force; deliberate indifference to serious medical needs; inadequate municipal policies or

22   customs; battery; and gross negligence.  Mr. Guinn has opposed the motion, and the defendants have

23   filed a reply.[1]  Upon careful consideration of the parties' submissions and the record in this case, the

24   Court GRANTS IN PART and DENIES IN PART the motion for summary judgment.

25

26        [1] Mr. Guinn filed a belated opposition on October 26, 2011.  In response to the Court's order to show cause why
     the opposition should not be stricken as untimely, counsel for Mr. Guinn conceded a scheduling mistake on his part.  The
27   Court ADMONISHES counsel for his oversight.  It is the obligation of all parties appearing before the Court to adhere to
     the Local Rules.  This Court simply lacks the resources to accommodate untimely briefing from attorneys.  Nevertheless,
28   because the defendants were able to file a timely reply and because the Court strongly prefers to resolve matters on their
     merits, the Court will accept Mr. Guinn's otherwise late opposition.

                                                   1

1    I.       **BACKGROUND**

2            A.       **Factual Background**[2]

3        On January 21, 2009, at approximately 11:30 p.m., Mr. Guinn contacted 9-1-1 and reported an

4   altercation with his girlfriend.  Deputy Jackson responded to the emergency call and after conducting

5   an initial investigation into the matter, placed Mr. Guinn under arrest for inflicting corporal injury on

6   a spouse.  At the time of the arrest, Mr. Guinn was intoxicated: he had consumed at least five glasses

7   of wine in the preceding hours.

8        Deputy Sturm was subsequently placed in charge of transporting Mr. Guinn to the county jail.

9   During the approximately forty-five minute drive to the jail, there was no indication that Mr. Guinn

10  suffered any medical distress or physical injury.  Although Mr. Guinn was visibly intoxicated, he was

11  cooperative, conversive, and ambulatory.  In fact, when the two arrived at the jail, Mr. Guinn was able

12  to walk on his own, although Deputy Sturm held on to one of Mr. Guinn's arms in order to guide him

13  in the right direction.

14       Officers Bigham, Beach, and Fey were on duty at the jail when Mr. Guinn and Deputy Sturm

15  arrived.  What happened next during the jail booking process is in dispute.  From what Mr. Guinn can

16  recall, he was acting "smart" and being uncooperative during the booking process.  Mr. Guinn alleges

17  that in response, someone approached him from behind, quickly placed him in a choke hold, and asked

18  him to calm down.  According to the defendants, however, Mr. Guinn was never confrontational with

19  the officers and force was never used.  The defendants assert that Deputy Sturm and Officers Bigham

20  and Beach simply chose to bypass the booking process, and they took Mr. Guinn directly to a sobering

21  cell because he was clearly intoxicated.

22       In any event, the parties agree that Mr. Guinn was left in a sobering cell laying on the floor mat

23  at approximately 1:30 a.m.  Around fifteen minutes later, Officer Bigham returned to the cell to check

24  on Mr. Guinn.  Officer Bigham observed Mr. Guinn on his hands and knees with his face downward.

25  Officer Bigham was left with the impression that Mr. Guinn's breathing was "shallow."  Nevertheless,

26  Mr. Guinn was conscious and able to converse with Officer Bigham.  After conferring with the other

27  officers, Officer Bigham decided that Mr. Guinn should be evaluated by medical personnel.  Although

28  
_____

       [2] The following facts are undisputed unless otherwise noted.

1   the jail did not have in-house medical staff available, the local hospital was only a three-minute drive

2   from the jail.  With some assistance and direction from the jail officers, Mr. Guinn was able to walk to

3   and from the jail transport van.

4        Mr. Guinn was admitted to the hospital at 2:25 a.m.  Shortly after Mr. Guinn's arrival, nursing

5   staff took Mr. Guinn's vital signs.  The vital signs appeared to be normal.  Next, Dr. Krueger examined

6   Mr. Guinn.  It did not appear to Dr. Krueger that Mr. Guinn was having any difficulty breathing.  Dr.

7   Krueger ordered a toxicology report and instructed the nursing staff to provide Mr. Guinn oxygen and

8   to let him sleep off his evident intoxication.

9        At 2:50 a.m., Mr. Guinn went into full respiratory distress.  In response, Dr. Krueger attempted

10  to intubate Mr. Guinn.  After the fourth unsuccessful attempt, Dr. Krueger performed an emergency

11  chricthyrotomy to establish an airway.  Mr. Guinn regained his ability to breathe.  Thereafter, it became

12  apparent to the medical staff that Mr. Guinn must have ingested a substance other than alcohol.  The

13  toxicology report tested positive for opiates.

14       Upon instruction, Deputy Jackson contacted Mr. Guinn's girlfriend to ask whether Mr. Guinn

15  was under the influence of any other substance.  Mr. Guinn's girlfriend responded that Mr. Guinn was

16  possibly under the influence of Vicodin.  She explained that Mr. Guinn had a bottle of Vicodin, but she

17  was unable to find it.  Mr. Guinn later acknowledged that he took Hydrocodone on a regular basis to

18  relieve his back pain.

19       The Sheriff's Department conducted an internal investigation into the incident after Mr. Guinn

20  filed a complaint with the Department of Justice.  The investigation was conducted by Sergeants Sarno

21  and Rumfelt.  The two investigators gathered Mr. Guinn's medical records, obtained statements from

22  the jail officials involved in the incident, and interviewed hospital staff.

23       **B.     Mr. Guinn's Claims**

24       Based on the foregoing, Mr. Guinn asserts federal claims pursuant to 42 U.S.C. § 1983 for (1)

25  the use of excessive force by Deputy Sturm, Officer Bigham, Sheriff Muller, and the County; and (2)

26  deliberate indifference to serious medical needs by Deputy Sturm, Officer Bigham, Sheriff Muller, and

27  the County.  In addition, Mr. Guinn presents state law claims for (3) battery against Deputy Sturm and

28  Officer Bigham; and (4) gross negligence against Deputy Sturm and Officer Bigham.

1    II.    **LEGAL STANDARDS**

2          Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery,

3    and the affidavits provided establish that "there is no genuine dispute as to any material fact and the

4    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one which

5    may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

6    A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor

7    of the nonmoving party.  Id.

8          A party seeking summary judgment "always bears the initial responsibility of informing the

9    district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

10   answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

11   demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317,

12   323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an

13   issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

14   the moving party."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue

15   as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely

16   by pointing out that there is an absence of evidence to support the nonmoving party's case."  Id. (citing

17   Celotex, 477 U.S. at 323).

18         If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

19   material fact by presenting *affirmative evidence* from which a jury could find in [its] favor."  FTC v.

20   Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original).  The nonmoving party must

21   go beyond the allegations set forth in its pleadings.  See Fed. R. Civ. P. 56(c).  "[B]ald assertions or a

22   mere scintilla of evidence" will not suffice.  Stefanchik, 559 F.3d at 929.  Indeed, the mere presence of

23   "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary

24   judgment.  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Where

25   the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

26   is no 'genuine issue for trial.'"  Id. at 587 (citation omitted).

27         In resolving a summary judgment motion, "the court does not make credibility determinations

28   or weigh conflicting evidence."  Soremekun, 509 F.3d at 984.  See Anderson, 477 U.S. at 255.  Rather,

4

1  "[t]he evidence of the [nonmoving party] is to believed, and all justifiable inferences are to be drawn

2  in [its] favor." Id.  Inferences, however, are not drawn out of the air; the nonmoving party must provide

3  a factual predicate from which the inference may justifiably be drawn.  See Richards v. Nielsen Freight

4  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

5  **III.  DISCUSSION**

6        **A.  Section 1983 Claims**

7        Mr. Guinn presents federal claims for damages against the defendants pursuant to 42 U.S.C. §

8  1983.  Section 1983 provides:

9        Every person who, under color of [state law] . . . subjects, or causes to be subjected, any
   citizen of the United States or other person within the jurisdiction [of the United States]

10  to the deprivation of any rights, privileges, or immunities secured by the Constitution
   and laws [of the United States], shall be liable to the party injured in an action at law,

11  suit in equity, or other proper proceeding for redress . . . .

12  42 U.S.C. § 1983.  Section 1983 does not create any substantive rights, but instead provides a vehicle

13  for plaintiffs to bring federal constitutional and statutory challenges against actions by state and local

14  officials.  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  To prevail on a § 1983 claim, a

15  plaintiff must prove that: (1) the defendants deprived plaintiff of a federal statutory or constitutional

16  right, and (2) the defendants acted under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988);

17  Anderson, 451 F.3d at 1067.

18        **1.  Excessive Force**

19        As noted above, Mr. Guinn claims that the defendants used excessive force against him.  More

20  precisely, Mr. Guinn sues (a) Deputy Sturm and Officer Bigham in their individual capacities for their

21  use of excessive force; (b) Sheriff Muller in his individual capacity for his failure to properly train and

22  supervise Deputy Sturm and Officer Bigham; and (c) the County for maintaining polices and customs

23  that resulted in the use of excessive force against Mr. Guinn.[3]

24        **a.  Deputy Sturm and Officer Bigham**

25        A claim against a peace officer for the use of excessive force during the arrest or seizure of an

26  individual is analyzed under the Fourth Amendment's "objective reasonableness" standard.  Graham

27

28      [3] Mr. Guinn does not specifically indicate whether he sues the individual defendants in their official or personal capacities.  However, because there is a presumption that officials are sued in their personal capacities, the Court construes Mr. Guinn's claims accordingly.  See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999).

1   v. Connor, 490 U.S. 386, 388 (1989); Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001).

2   Under this standard, a court must balance "the nature and quality of the intrusion on the individual's

3   Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490

4   U.S. at 396.  In other words, the court must "balance the amount of force applied against the need for

5   that force." Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003).  Considerations such as "the type

6   and amount of force inflicted" are to be assessed and weighed against "(1) the severity of the crime at

7   issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3)

8   whether he is actively resisting arrest or attempting to evade arrest by flight." Chew v. Gates, 27 F.3d

9   1432, 1440 (9th Cir. 1994).

10      Here, Deputy Sturm and Officer Bigham contest the allegation that a choke hold, or any force,

11   was ever used against Mr. Guinn.  Both the defendants specifically assert that they did not personally

12   apply a choke hold on Mr. Guinn; that they never came into contact with Mr. Guinn's throat or neck

13   area; and that at no point did they observe any other person come into contact with Mr. Guinn's throat

14   or neck area.  (Doc. 33, Sturm Decl. ¶¶ 20-21; Doc. 34, Bigham Decl. ¶¶ 22-25.)  Their assertions are

15   corroborated by Officers Beach and Fey who have provided declarations stating the same.  (Doc. 35,

16   Beach Decl. ¶¶ 17-19, Doc. 36, Fey Decl. ¶ 16.)

17      According to the defendants, Deputy Sturm brought Mr. Guinn to the jail, the officers decided

18   to bypass the booking process due to Mr. Guinn's intoxication, and Mr. Guinn was taken directly to a

19   sobering cell.  (Doc. 33, Sturm Decl. ¶¶ 9, 11; Doc. 34, Bigham Decl. ¶¶ 7-8; Doc. 35, Beach Decl. ¶

20   9.)  The defendants maintain that there was never a need to use a choke hold or any amount of force

21   against Mr. Guinn.  The defendants contend that Mr. Guinn remained cooperative and compliant at all

22   times.  (Doc. 33, Sturm Decl. ¶ 19; Doc. 34, Bigham Decl. ¶ 22; Doc. 35, Beach Decl. ¶ 17; Doc. 36,

23   Fey Decl. ¶ 15.)

24      In his opposition, Mr. Guinn primarily relies on his deposition testimony to paint a different

25   picture.  Mr. Guinn's recollection of the events is as follows.  Mr. Guinn, Deputy Sturm, and Officer

26   Bigham were in the jail booking area.  (See Doc. 43, Guinn Depo. at 44:8-11.)  At one point during the

27   booking process, Mr. Guinn decided to sit on a counter behind him.  (Id. at 38:2-9.)  A female officer

28   ordered him to get off the counter "a couple of times."  (Id. at 38:8-13.)  In response, Mr. Guinn began

6

1   acting "smart" with the female officer. (<u>Id.</u> at 43:7-9.) Soon after, "someone" approached Mr. Guinn

2   from behind and placed him in a choke hold. (<u>Id.</u> at 43:11-44:21.) The female officer then asked Mr.

3   Guinn if he was going to "calm down." (<u>Id.</u> at 44:23-24.) Mr. Guinn later found himself sitting in a

4   sobering cell. (<u>Id.</u> at 45:5-6.)

5       The parties ultimately present different versions of the events. Although the defendants invite

6   the Court to discount Mr. Guinn's version of the facts due to his intoxication and limited recollection,

7   such would be inappropriate. "A judge must not grant summary judgment based on his determination

8   that one set of facts is more believable than another." <u>Nelson v. City of Davis</u>, 571 F.3d 924, 929 (9th

9   Cir. 2009). On a summary judgment motion, "the court does not make credibility determinations or

10  weigh conflicting evidence." <u>Soremekun</u>, 509 F.3d at 984. That task is left to the factfinder. <u>Nelson</u>,

11  571 F.3d at 929. To withstand summary judgment, the nonmoving party need only show the existence

12  of a genuine issue of material fact. Mr. Guinn has done so here. Accordingly, Deputy Sturm and

13  Officer Bigham are not entitled to summary judgment on Mr. Guinn's excessive force claims.

14              **b.      Sheriff Muller**

15      A supervisor's failure to train subordinates may give rise to liability under § 1983 where the

16  failure amounts to deliberate indifference to the rights of persons whom the subordinates are likely to

17  come into contact. <u>Canell v. Lightner</u>, 143 F.3d 1210, 1213 (9th Cir. 1998) (citing <u>City of Canton v.</u>

18  <u>Harris</u>, 489 U.S. 378, 388 (1989)). To prevail on such a claim, the plaintiff must prove that: (1) the

19  supervisor's training was inadequate; (2) the inadequate training was a conscious choice on the part of

20  the supervisor that amounted to deliberate indifference; and (3) the inadequacy of the training caused

21  a constitutional violation. <u>See Canell</u>, 143 F.3d at 1214.

22      In moving for summary judgment, Sheriff Muller argues, among other things, that there is no

23  evidence demonstrating that Deputy Sturm's or Officer Bigham's training was inadequate with respect

24  to the use of force. As support for this argument, Sheriff Muller provides the declaration of Sheriff

25  Douglas A. Binnewies. Therein, Sheriff Binnewies maintains that all deputy sheriffs and jail officers

26  employed by the County receive training at the academy, during field training programs, and through

27  various class and seminars. (Doc. 37, Binnewies Decl. ¶¶ 5, 8.) Sheriff Binnewies maintains that the

28  training for deputy sheriffs relating to the use of force meet or exceed the requirements set forth by the

1  California Commission on Peace Officer Standards and Training.  (Id. ¶¶ 4, 6.)  Sheriff Binnewies also

2  asserts that the training for jail officers relating to the use of force meet or exceed the requirements

3  outlined by the California Department of Corrections and Rehabilitation, Standards and Training for

4  Corrections.  (Id. ¶¶ 7, 9.)

5      In response, Mr. Guinn fails to argue or present any evidence that this training is inadequate in

6  preventing the use of excessive force by peace officers.  Because Mr. Guinn fails to establish a genuine

7  issue of material fact in this regard, Sheriff Muller is entitled to summary judgment on Mr. Guinn's

8  failure to train claim.  See Canell, 143 F.3d at 1213-14.

9                    **c.    The County**

10     Local governments are "persons" subject to liability under 42 U.S.C. § 1983.  Monell v. Dep't

11  of Soc. Servs., 436 U.S. 658, 690 (1978).  A local government, however, cannot be held liable under §

12  1983 on a theory of *respondeat superior*.  Id. at 691.  Rather, to impose liability on a local government

13  under § 1983, a plaintiff must show that: (1) there was a violation of the plaintiff's constitutional rights;

14  (2) the municipality had a policy, procedure, or custom; (3) the policy, procedure, or custom amounts

15  to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy, procedure, or custom

16  was the moving force behind the constitutional violation.  See Plumeau v. Sch. Dist. No. 40, 130 F.3d

17  432, 438 (9th Cir. 1997).

18     In moving for summary judgment, the County argues that it does not have a policy, procedure,

19  or custom that served as the moving force behind any use of excessive force against Mr. Guinn.  The

20  County maintains that it has implemented policies such as General Order 87-4 regarding the proper use

21  of force in the field and at the jail.  (See Doc. 37, Binnewies Decl., Ex. A.)  The County also maintains

22  that all its peace officers are adequately trained in the use of force, are adequately supervised, and are

23  subject to discipline when appropriate.

24     In his opposition, Mr. Guinn takes issue with the internal investigation that was conducted into

25  the incident.  Mr. Guinn maintains that the investigation was cursory and prematurely terminated.  In

26  particular, Mr. Guinn stresses that the detectives who were responsible for the investigation, Sergeants

27  Sarno and Rumfelt, failed to speak with pertinent witnesses such as himself, Dr. Krueger, and medical

28  staff at the local hospital.  Mr. Guinn asserts that instead, the detectives simply gathered self-serving

1  statements from the jail officers who were involved in the incident.  Moreover, Mr. Guinn asserts that

2  Sergeant Sarno abruptly ended her investigation upon instruction from her superiors.  In Mr. Guinn's

3  view, "[s]uch conduct by the Sheriff's Office clearly indicates a desire to circumvent the policies and

4  procedures issued in writing."  (Doc. 44, Pl.'s Opp'n, at 6.)

5          Mr. Guinn's evidence fails to show a genuine issue of material fact as to whether the County

6  maintains a deficient policy, procedure, or custom with respect to the use of force.  In a *Monell* claim,

7  there are three ways to demonstrate the existence of a municipal policy, procedure, or custom sufficient

8  to give rise to liability under § 1983: (1) by showing an expressly adopted official policy or procedure

9  that an employee acts pursuant to in committing the claimed constitutional violation; (2) by showing

10 a longstanding or widespread practice or custom that an employee acts pursuant to in committing the

11 claimed constitutional violation; or (3) by showing that an employee acted as a "final policymaker" in

12 committing the claimed constitutional violation.  Delia v. City of Rialto, 621 F.3d 1069, 1081-82 (9th

13 Cir. 2010); see Ulrich v. City & County of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002).  Here,

14 Mr. Guinn's evidence regarding perceived deficiencies in the internal investigation fails to establish a

15 genuine issue of material fact with respect to any of these three routes.

16         First, Mr. Guinn does not appear to argue that an express County policy is responsible for the

17 excessive force that was allegedly used against him.  Mr. Guinn does not point to, nor challenge, any

18 specific policy that has been adopted and maintained by the County.  See Waggy v. Spokane County

19 Wash., 594 F.3d 707, 713-14 (9th Cir. 2010) (to challenge an express municipal policy or custom, the

20 plaintiff must allege and prove that an express policy exists).

21         Second, Mr. Guinn fails to present evidence sufficient to show the existence of a longstanding

22 or widespread municipal practice or custom.  It is true that "evidence of inaction – specifically, failure

23 to investigate and discipline employees [despite] *widespread* constitutional violations – can support an

24 inference that an unconstitutional custom or practice has been unofficially adopted by a municipality."

25 Hunter v. County of Sacramento, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011) (emphasis added).  See also

26 Gillette v. Delmore, 979 F.2d 1342, 1348-49 (9th Cir. 1992) ("A section 1983 plaintiff may attempt to

27 prove the existence of a custom or informal policy with evidence of repeated constitutional violations

28 for which . . . errant municipal officials were not discharged or reprimanded.")  However, here, even

9

assuming that the internal investigation into Mr. Guinn's injuries was inadequate, Mr. Guinn fails to present evidence of *repeated* and *widespread* inadequacies in the Sheriff Department's investigations into alleged constitutional violations. Instead, Mr. Guinn simply asserts that the internal investigation pertaining to *his* incident was deficient. A reasonable juror could not infer from this single incident a longstanding municipal custom or practice of inadequate investigation and discipline. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom [under *Monell*] may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency[.]").

Third, Mr. Guinn fails to offer evidence sufficient to show that a final policymaker authorized or otherwise ratified the alleged constitutional violation. "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). In other words, the policymaker must make a "conscious, affirmative choice" to ratify the conduct in question. Gillette, 979 F.2d at 1347. "[I]t is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval [for ratification purposes]." Christie, 176 F.3d at 1239. See Gillette, 979 F.2d at 1348.

In his opposition, Mr. Guinn appears to argue that a final policymaker effectively ratified the conduct of Deputy Strum and Officer Bigham when the Sheriff's Department advised Sergeant Sarno to end her investigation. However, Mr. Guinn fails to offer evidence sufficient to support this theory. For example, Mr. Guinn provides no evidence as to why the Sheriff's Department instructed Sergeant Sarno to end her investigation, whether the entire investigation came to an end at that point (Sergeant Rumfelt was also investigating the matter), and most importantly, what findings and conclusions were ultimately reached (i.e., did the investigation ultimately clear Deputy Sturm and Officer Bigham of all wrongdoing?). In the absence of such evidence, a juror could not reasonably infer that the Sheriff's Department intended to ratify "the basis" of any conduct when it instructed one of its detectives to end her investigation into the matter.[4] Christie, 176 F.3d at 1239.

---

[4] It is notable that Sergeant Sarno's investigation lasted for more than two months before the "administration" advised her to end her investigation. (See Doc. 43, Ex. G, Sarno Depo. at 10:5-23; 21:14-19.)

1    In sum, Mr. Guinn fails to establish a genuine issue of material fact as to whether the County

2  adopted and maintains a deficient policy, procedure, or custom regarding the use of force by its peace

3  officers.  This is fatal to Mr. Guinn's *Monell* claim.  Accordingly, the County is entitled to summary

4  judgment on this claim.

5                        **2.      Inadequate Medical Care**

6    With respect to his claims for inadequate medical care, Mr. Guinn sues (a) Deputy Sturm and

7  Officer Bigham in their individual capacities for being deliberately indifferent to his serious medical

8  needs; (b) Sheriff Brian in his individual capacity for failing to adequately supervise Deputy Sturm and

9  Officer Bigham; and (c) the County for maintaining policies and procedures that failed to protect Mr.

10  Guinn from the deliberate indifference of County officials.

11                     **a.      Deputy Sturm and Officer Bigham**

12    Claims for failure to provide care for serious medical needs, when brought by a detainee such

13  as Mr. Guinn who has neither been charged nor convicted of a crime, are properly analyzed under the

14  Due Process Clause of the Fourteenth Amendment.  See Lolli v. County of Orange, 351 F.3d 410, 418

15  (9th Cir. 2003).  The Due Process Clause of the Fourteenth Amendment "imposes, at a minimum, the

16  same duty the Eighth Amendment imposes: persons in custody have the established right to not have

17  officials remain deliberately indifferent to their serious medical needs."  Gibson v. County of Washoe,

18  290 F.3d 1175, 1187 (9th Cir. 2002).  Therefore, a detainee establishes a claim for inadequate medical

19  care under the Fourteenth Amendment by showing that: (1) he had a serious medical need; and (2) an

20  official responded to that need with deliberate indifference.  See Estelle v. Gamble, 429 U.S. 97, 104

21  (1976); Gibson, 290 F.3d at 1187-88.

22    The issue raised in this case is whether Deputy Sturm or Officer Bigham acted with deliberate

23  indifference to Mr. Guinn's breathing difficulties.  Deputy Sturm and Officer Bigham argue that the

24  undisputed facts demonstrate that they did not.  According to the two defendants, the undisputed facts

25  show that they timely recognized Mr. Guinn's need for medical attention and responded appropriately

26  by transporting Mr. Guinn to the local hospital for emergency treatment.  Deputy Sturm and Officer

27  Bigham contend that if anything, their actions saved Mr. Guinn's life.  After reviewing the evidence

28  presented, the Court agrees.

1    A defendant acts with deliberate indifference to serious medical needs when he or she (1) has

2    actual knowledge of a substantial risk of harm to the plaintiff's health and safety, yet (2) fails to take

3    reasonable measures to abate the danger, (3) causing plaintiff harm.  See Farmer v. Brennan, 511 U.S.

4    825, 847 (1994); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Here, even assuming that Deputy

5    Sturm and Officer Bigham were actually aware at some point that Mr. Guinn faced a serious medical

6    need, the record demonstrates that the defendants took reasonable measures to abate the danger to Mr.

7    Guinn's health and safety.

8    The following facts are undisputed in this regard.  Deputy Sturm and Officer Bigham left Mr.

9    Guinn in the sobering cell around 1:30 a.m.  (Doc. 33, Sturm Decl. ¶ 17.)  Mr. Guinn did not have any

10   difficulty breathing before he was placed in the sobering cell.  (Doc. 32-1, Guinn Depo. at 45:21-46:4;

11   46:18-20.)  Approximately fifteen minutes later, Officer Bigham checked-in on Mr. Guinn and was left

12   with the impression that Mr. Guinn's breathing was "shallow."  (Doc. 34, Bigham Decl. ¶ 17.)  Officer

13   Bigham reported her concerns regarding Mr. Guinn to her supervisors.  (Doc. 32-4, Bigham Depo. at

14   17:24-18:8; 19:2-20:12.)  After receiving clearance from her supervisors, Officer Bigham transported

15   Mr. Guinn to the hospital at around 2:05 a.m.  (Id.; Doc. 34, Bigham Decl., Ex. A.)  Deputy Sturm met

16   the group at the hospital and assisted Mr. Guinn into the hospital.  (Doc. 32-3, Sturm Depo. at 40:18-

17   42:22.)  Mr. Guinn was admitted to the hospital by 2:25 a.m. and was under the care and observation

18   of medical personnel thereafter.  (See Doc. 32-5, Krueger Depo. at 41:13-16; 45:13-50:20.)  In sum, Mr.

19   Guinn was transported to the hospital and received treatment for his breathing difficulties within one

20   hour of his initial symptoms.

21   In the face of these undisputed facts, Mr. Guinn fails to produce any evidence, or even a clear

22   argument, showing how the response by Deputy Sturm and Officer Bigham to Mr. Guinn's breathing

23   abnormalities was in any way deficient.  From what the Court is able to glean from Mr. Guinn's brief

24   opposition, it appears that Mr. Guinn simply argues that the defendants should have responded sooner.

25   This argument is flawed in at least two critical respects.

26   First, the only suggestion that Mr. Guinn ever complained to jail officials about his breathing

27   difficulties is Mr. Guinn's assertion that he pressed a speaker button inside the sobering cell and asked

28   for help.  (Doc. 32-1, Guinn Depo. at 46:21-47:3.)  However, it is undisputed that there is *no* speaker

1    button or intercom in the sobering cell.[5]  (Doc. 51, Pl.'s Statement of Undisputed Facts, 51; Doc. 34,

2    Bigham Decl. ¶ 10.)  Therefore, the Court gives no weight to Mr. Guinn's assertion that he attempted

3    to alert jail officials to his medical needs at some earlier point.  See Scott v. Harris, 550 U.S. 372, 380

4    (2007) (in ruling on a motion for summary judgment, a court may disregard a version of the facts that

5    is blatantly contradicted by the record).

6         Second, even assuming that jail officials could have responded sooner that they did, there is no

7    evidence or indication that Mr. Guinn suffered any appreciable harm by the supposed delay in medical

8    attention.  See Jett, 439 F.3d at 1096 (deliberate indifference requires a showing that some harm was

9    caused by the indifference).  As noted above, Officer Bigham had Mr. Guinn transported to the local

10   hospital within thirty minutes of Mr. Guinn's first symptoms.  Therefore, to the extent that Mr. Guinn

11   argues that the defendants should have responded sooner, he is attempting to parse mere minutes.  Yet,

12   there is nothing in the record demonstrating that mere minutes caused Mr. Guinn to suffer any harm.

13   When Mr. Guinn arrived at the hospital at the time he did, his vital signs and breathing were normal.

14   (Doc. 32-5, Krueger Depo. at 48:11-49:7; 50:4-6.)  Mr. Guinn fell into respiratory distress only after

15   medical personnel had examined him and only after he had already spent approximately thirty minutes

16   at the hospital.

17        The undisputed facts therefore demonstrate that Deputy Sturm and Officer Bigham did not act

18   with deliberate indifference to Mr. Guinn's serious medical needs because they reasonably responded

19   to Mr. Guinn's breathing difficulties.  Accordingly, a reasonable trier of fact could not return a verdict

20   in Mr. Guinn's favor based on the evidence presented.  Deputy Sturm and Officer Bigham are entitled

21   to summary judgment on these claims.

22                                    **b.    Sheriff Muller**

23        Because the undisputed facts establish that there was no underlying constitutional violation for

24   deliberate indifference to Mr. Guinn's serious medical needs, Sheriff Muller cannot be held liable for

25   his alleged failure in supervising Deputy Sturm and Officer Bigham.  See Jackson, 268 F.3d at 653 (a

26   supervisor cannot be held liable under § 1983 where no constitutional violation has occurred); Blyden

27   v. Mancusi, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section

28

_____

[5] The sobering cell did have a button that a person could press for water.  (Doc. 32-4, Bigham Depo. at 16:1-3.)

1   1983, there must have been an underlying constitutional deprivation."). Accordingly, Sheriff Muller

2   is entitled to summary judgment on this claim.

3                           **c.    The County**

4          Similarly, because there is no underlying constitutional violation for deliberate indifference to

5   Mr. Guinn's serious medical needs, the County also cannot be held liable under *Monell* for allegedly

6   maintaining a policy, procedure, or custom that amounts to deliberate indifference to serious medical

7   needs. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("[N]either *Monell* . . . nor any of

8   our cases authorizes the award of damages against a municipal corporation based on the actions of one

9   of its officers when in fact . . . the officer inflicted no constitutional harm."); Scott v. Henrich, 39 F.3d

10  912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual

11  officers, it is contingent on a violation of constitutional rights."). Accordingly, the County is entitled

12  to summary judgment on this claim.

13                          **3.    Qualified Immunity**

14         Deputy Sturm and Officer Bigham maintain that they are entitled to qualified immunity with

15  respect to Mr. Guinn's excessive force claims.[6]  Qualified immunity shields government officials from

16  liability for civil damages, insofar as "their conduct does not violate clearly established statutory or

17  constitutional rights of which a reasonable person would have known." Cousins v. Lockyer, 568 F.3d

18  1063, 1069 (9th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The doctrine of

19  qualified immunity balances "the need to hold public officials accountable when they exercise power

20  irresponsibly and the need to shield [public] officials from harassment, distraction, and liability when

21  they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

22         Determining whether an official is entitled to qualified immunity requires a two-part analysis.

23  Saucier v. Katz, 533 U.S. 194, 201 (2001). First, a court must decide whether the facts alleged, when

24  taken in the light most favorable to the plaintiff, show that the official's conduct violated a statutory or

25  constitutional right. Id. Second, the court must determine whether the statutory or constitutional right

26

27         [6] The Court notes that Deputy Sturm, Officer Bigham, and Sheriff Muller argue that they are entitled to qualified
    immunity on all of Mr. Guinn's § 1983 claims. However, the Court has already determined that the only § 1983 claims that
28  survive summary judgment are Mr. Guinn's excessive force claims against Deputy Sturm and Officer Bigham. Therefore,
    the Court need only address qualified immunity in the context of these claims.

1   was "clearly established." Id.  A right is "clearly established" in the context of qualified immunity if

2   "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted

3   . . . or whether the state of the law [at the time of the violation] gave fair warning to the official[] that

4   [his] conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (internal

5   citation and quotation marks omitted).

6          Although it is often beneficial to address the two-party inquiry in the sequence outlined above,

7   it is not mandatory.  Pearson, 555 U.S. at 236.  A court has "discretion in deciding which of the two

8   prongs of the qualified immunity analysis should be addressed first[.]" Id.  A court may grant qualified

9   immunity and dismiss a plaintiff's claims at any point the court answers either prong in the negative.

10  See, e.g., Tibbetts v. Kulongoski, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassing the first prong and

11  granting the defendants qualified immunity because the plaintiff's due process claim was not a clearly

12  established right at the time of the alleged violation).

13         Here, Deputy Sturm and Officer Bigham maintain that they are entitled to qualified immunity

14  by simply reiterating that no choke hold was ever applied against Mr. Guinn.  However, the Court has

15  already determined that a genuine issue of material fact exists on this issue.  Accordingly, absent any

16  argument by the defendants that Mr. Guinn does not have a clearly established right to be free from a

17  choke hold under the circumstances presented, Deputy Sturm and Officer Bigham are not entitled to

18  qualified immunity on Mr. Guinn's excessive force claims.

19         **B.     State Law Claims**

20              **1.     Battery**

21         Mr. Guinn claims that Deputy Sturm and Officer Bigham committed battery against him when

22  they placed him in a choke hold.  In the context of a peace officer's use of force, "[a] state law battery

23  claim is [the] counterpart to a federal claim of excessive use of force[,]" and similar standards apply.

24  Brown v. Ransweiler, 171 Cal. App. 4th 516, 527 & n.11 (2009).  See also Edson v. City of Anaheim,

25  63 Cal. App. 4th 1269, 1274 (1998) (applying the standards for a federal excessive force claim under

26  § 1983 to a state law battery claim).  Accordingly, Mr. Guinn's state law battery claims against Deputy

27  Sturm and Officer Bigham survive for the same reason his Fourth Amendment excessive force claims

28  survive: there is a genuine issue of material fact as to whether Mr. Guinn was placed in a choke hold

1    during the booking process.  As such, Deputy Sturm and Officer Bigham are not entitled to summary

2    judgment on Mr. Guinn's claims for battery.

3                                    **2.      Gross Negligence**

4          Mr. Guinn claims that Deputy Sturm and Officer Bigham responded to his medical needs with

5    gross negligence.  The elements for proving a state law claim for gross negligence in the context of a

6    detainee's medical needs are similar to those of an Eighth Amendment deliberate indifference claim.

7    Under California law, a public employee is not liable for injuries to prisoners caused by the employee's

8    failure to provide medical care unless "the employee knows or has reason to know that the prisoner is

9    in need of immediate medical care and [the employee] fails to take reasonable action to summon such

10   medical care[.]" Cal. Gov. Code § 845.6.[7]  As already explained above, even assuming Deputy Sturm

11   and Officer Bigham had actual knowledge that Mr. Guinn's breathing condition required immediate

12   medical attention, the undisputed facts show that the two defendants acted reasonably in securing Mr.

13   Guinn appropriate medical care.  Accordingly, Deputy Sturm and Officer Bigham are immune from

14   liability pursuant to California Government Code Section 845.6 and are entitled to summary judgment

15   on Mr. Guinn's gross negligence claims.

16   **IV.    CONCLUSION**

17         For all the reasons set forth above, this Court:

18   1.        DENIES Deputy Sturm and Officer Bigham summary judgment with respect to Mr.

19             Guinn's Fourth Amendment excessive force claims;

20   2.        DENIES Deputy Sturm and Officer Bigham summary judgment with respect to Mr.

21             Guinn's state law battery claims; and

22   3.        GRANTS the defendants summary judgment with respect to all other claims. IT IS SO
               ORDERED.

23

24   **Dated:      November 9, 2011**            **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE

25

26

27   _____

28       [7] The California Tort Claims Act defines "prisoner" in the context of Section 845.6 as "an inmate of a prison, jail,
     or penal or correctional facility."  Cal. Gov. Code § 844.  Under this definition, Mr. Guinn's detainee status qualifies him
     as a prisoner within the scope of Section 845.6