IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULO EUGENE GUINN, | Case No. 1:10-cv-00320 LJO SKO |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | (Doc. 30) |
| J STURM, et al., | |
| Defendants. | |

This matter comes before the Court on the motion for summary judgment filed by Defendants County of Mariposa ("County"), Sheriff Brian Muller ("Sheriff Muller"), Jail Officer Athena Bigham ("Officer Bigham"), and Deputy Justin Sturm ("Deputy Sturm"). The defendants move for summary judgment on all claims asserted by Plaintiff Paulo Eugene Guinn ("Mr. Guinn") in this action: the use of excessive force; deliberate indifference to serious medical needs; inadequate municipal policies or customs; battery; and gross negligence. Mr. Guinn has opposed the motion, and the defendants have filed a reply.[1] Upon careful consideration of the parties' submissions and the record in this case, the Court GRANTS IN PART and DENIES IN PART the motion for summary judgment.

---

[1] Mr. Guinn filed a belated opposition on October 26, 2011. In response to the Court's order to show cause why the opposition should not be stricken as untimely, counsel for Mr. Guinn conceded a scheduling mistake on his part. The Court ADMONISHES counsel for his oversight. It is the obligation of all parties appearing before the Court to adhere to the Local Rules. This Court simply lacks the resources to accommodate untimely briefing from attorneys. Nevertheless, because the defendants were able to file a timely reply and because the Court strongly prefers to resolve matters on their merits, the Court will accept Mr. Guinn's otherwise late opposition.

1

**I.     BACKGROUND**

    **A.     Factual Background**[2]

On January 21, 2009, at approximately 11:30 p.m., Mr. Guinn contacted 9-1-1 and reported an altercation with his girlfriend. Deputy Jackson responded to the emergency call and after conducting an initial investigation into the matter, placed Mr. Guinn under arrest for inflicting corporal injury on a spouse. At the time of the arrest, Mr. Guinn was intoxicated: he had consumed at least five glasses of wine in the preceding hours.

Deputy Sturm was subsequently placed in charge of transporting Mr. Guinn to the county jail. During the approximately forty-five minute drive to the jail, there was no indication that Mr. Guinn suffered any medical distress or physical injury. Although Mr. Guinn was visibly intoxicated, he was cooperative, conversive, and ambulatory. In fact, when the two arrived at the jail, Mr. Guinn was able to walk on his own, although Deputy Sturm held on to one of Mr. Guinn's arms in order to guide him in the right direction.

Officers Bigham, Beach, and Fey were on duty at the jail when Mr. Guinn and Deputy Sturm arrived. What happened next during the jail booking process is in dispute. From what Mr. Guinn can recall, he was acting "smart" and being uncooperative during the booking process. Mr. Guinn alleges that in response, someone approached him from behind, quickly placed him in a choke hold, and asked him to calm down. According to the defendants, however, Mr. Guinn was never confrontational with the officers and force was never used. The defendants assert that Deputy Sturm and Officers Bigham and Beach simply chose to bypass the booking process, and they took Mr. Guinn directly to a sobering cell because he was clearly intoxicated.

In any event, the parties agree that Mr. Guinn was left in a sobering cell laying on the floor mat at approximately 1:30 a.m. Around fifteen minutes later, Officer Bigham returned to the cell to check on Mr. Guinn. Officer Bigham observed Mr. Guinn on his hands and knees with his face downward. Officer Bigham was left with the impression that Mr. Guinn's breathing was "shallow." Nevertheless, Mr. Guinn was conscious and able to converse with Officer Bigham. After conferring with the other officers, Officer Bigham decided that Mr. Guinn should be evaluated by medical personnel. Although

---

[2] The following facts are undisputed unless otherwise noted.

the jail did not have in-house medical staff available, the local hospital was only a three-minute drive from the jail. With some assistance and direction from the jail officers, Mr. Guinn was able to walk to and from the jail transport van.

Mr. Guinn was admitted to the hospital at 2:25 a.m. Shortly after Mr. Guinn's arrival, nursing staff took Mr. Guinn's vital signs. The vital signs appeared to be normal. Next, Dr. Krueger examined Mr. Guinn. It did not appear to Dr. Krueger that Mr. Guinn was having any difficulty breathing. Dr. Krueger ordered a toxicology report and instructed the nursing staff to provide Mr. Guinn oxygen and to let him sleep off his evident intoxication.

At 2:50 a.m., Mr. Guinn went into full respiratory distress. In response, Dr. Krueger attempted to intubate Mr. Guinn. After the fourth unsuccessful attempt, Dr. Krueger performed an emergency chricthyrotomy to establish an airway. Mr. Guinn regained his ability to breathe. Thereafter, it became apparent to the medical staff that Mr. Guinn must have ingested a substance other than alcohol. The toxicology report tested positive for opiates.

Upon instruction, Deputy Jackson contacted Mr. Guinn's girlfriend to ask whether Mr. Guinn was under the influence of any other substance. Mr. Guinn's girlfriend responded that Mr. Guinn was possibly under the influence of Vicodin. She explained that Mr. Guinn had a bottle of Vicodin, but she was unable to find it. Mr. Guinn later acknowledged that he took Hydrocodone on a regular basis to relieve his back pain.

The Sheriff's Department conducted an internal investigation into the incident after Mr. Guinn filed a complaint with the Department of Justice. The investigation was conducted by Sergeants Sarno and Rumfelt. The two investigators gathered Mr. Guinn's medical records, obtained statements from the jail officials involved in the incident, and interviewed hospital staff.

**B.     Mr. Guinn's Claims**

Based on the foregoing, Mr. Guinn asserts federal claims pursuant to 42 U.S.C. § 1983 for (1) the use of excessive force by Deputy Sturm, Officer Bigham, Sheriff Muller, and the County; and (2) deliberate indifference to serious medical needs by Deputy Sturm, Officer Bigham, Sheriff Muller, and the County. In addition, Mr. Guinn presents state law claims for (3) battery against Deputy Sturm and Officer Bigham; and (4) gross negligence against Deputy Sturm and Officer Bigham.

## II. LEGAL STANDARDS

Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery, and the affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original). The nonmoving party must go beyond the allegations set forth in its pleadings. See Fed. R. Civ. P. 56(c). "[B]ald assertions or a mere scintilla of evidence" will not suffice. Stefanchik, 559 F.3d at 929. Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. See Anderson, 477 U.S. at 255. Rather,

"[t]he evidence of the [nonmoving party] is to believed, and all justifiable inferences are to be drawn in [its] favor." Id. Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

### III. DISCUSSION

#### A. Section 1983 Claims

Mr. Guinn presents federal claims for damages against the defendants pursuant to 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but instead provides a vehicle for plaintiffs to bring federal constitutional and statutory challenges against actions by state and local officials. Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). To prevail on a § 1983 claim, a plaintiff must prove that: (1) the defendants deprived plaintiff of a federal statutory or constitutional right, and (2) the defendants acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Anderson, 451 F.3d at 1067.

#### 1. Excessive Force

As noted above, Mr. Guinn claims that the defendants used excessive force against him. More precisely, Mr. Guinn sues (a) Deputy Sturm and Officer Bigham in their individual capacities for their use of excessive force; (b) Sheriff Muller in his individual capacity for his failure to properly train and supervise Deputy Sturm and Officer Bigham; and (c) the County for maintaining polices and customs that resulted in the use of excessive force against Mr. Guinn.[3]

##### a. Deputy Sturm and Officer Bigham

A claim against a peace officer for the use of excessive force during the arrest or seizure of an individual is analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham

---

[3] Mr. Guinn does not specifically indicate whether he sues the individual defendants in their official or personal capacities. However, because there is a presumption that officials are sued in their personal capacities, the Court construes Mr. Guinn's claims accordingly. See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999).

v. Connor, 490 U.S. 386, 388 (1989); Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001). Under this standard, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. In other words, the court must "balance the amount of force applied against the need for that force." Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003). Considerations such as "the type and amount of force inflicted" are to be assessed and weighed against "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994).

Here, Deputy Sturm and Officer Bigham contest the allegation that a choke hold, or any force, was ever used against Mr. Guinn. Both the defendants specifically assert that they did not personally apply a choke hold on Mr. Guinn; that they never came into contact with Mr. Guinn's throat or neck area; and that at no point did they observe any other person come into contact with Mr. Guinn's throat or neck area. (Doc. 33, Sturm Decl. ¶¶ 20-21; Doc. 34, Bigham Decl. ¶¶ 22-25.) Their assertions are corroborated by Officers Beach and Fey who have provided declarations stating the same. (Doc. 35, Beach Decl. ¶¶ 17-19, Doc. 36, Fey Decl. ¶ 16.)

According to the defendants, Deputy Sturm brought Mr. Guinn to the jail, the officers decided to bypass the booking process due to Mr. Guinn's intoxication, and Mr. Guinn was taken directly to a sobering cell. (Doc. 33, Sturm Decl. ¶¶ 9, 11; Doc. 34, Bigham Decl. ¶¶ 7-8; Doc. 35, Beach Decl. ¶ 9.) The defendants maintain that there was never a need to use a choke hold or any amount of force against Mr. Guinn. The defendants contend that Mr. Guinn remained cooperative and compliant at all times. (Doc. 33, Sturm Decl. ¶ 19; Doc. 34, Bigham Decl. ¶ 22; Doc. 35, Beach Decl. ¶ 17; Doc. 36, Fey Decl. ¶ 15.)

In his opposition, Mr. Guinn primarily relies on his deposition testimony to paint a different picture. Mr. Guinn's recollection of the events is as follows. Mr. Guinn, Deputy Sturm, and Officer Bigham were in the jail booking area. (See Doc. 43, Guinn Depo. at 44:8-11.) At one point during the booking process, Mr. Guinn decided to sit on a counter behind him. (Id. at 38:2-9.) A female officer ordered him to get off the counter "a couple of times." (Id. at 38:8-13.) In response, Mr. Guinn began

acting "smart" with the female officer. (Id. at 43:7-9.) Soon after, "someone" approached Mr. Guinn from behind and placed him in a choke hold. (Id. at 43:11-44:21.) The female officer then asked Mr. Guinn if he was going to "calm down." (Id. at 44:23-24.) Mr. Guinn later found himself sitting in a sobering cell. (Id. at 45:5-6.)

The parties ultimately present different versions of the events. Although the defendants invite the Court to discount Mr. Guinn's version of the facts due to his intoxication and limited recollection, such would be inappropriate. "A judge must not grant summary judgment based on his determination that one set of facts is more believable than another." Nelson v. City of Davis, 571 F.3d 924, 929 (9th Cir. 2009). On a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. That task is left to the factfinder. Nelson, 571 F.3d at 929. To withstand summary judgment, the nonmoving party need only show the existence of a genuine issue of material fact. Mr. Guinn has done so here. Accordingly, Deputy Sturm and Officer Bigham are not entitled to summary judgment on Mr. Guinn's excessive force claims.

### b. Sheriff Muller

A supervisor's failure to train subordinates may give rise to liability under § 1983 where the failure amounts to deliberate indifference to the rights of persons whom the subordinates are likely to come into contact. Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). To prevail on such a claim, the plaintiff must prove that: (1) the supervisor's training was inadequate; (2) the inadequate training was a conscious choice on the part of the supervisor that amounted to deliberate indifference; and (3) the inadequacy of the training caused a constitutional violation. See Canell, 143 F.3d at 1214.

In moving for summary judgment, Sheriff Muller argues, among other things, that there is no evidence demonstrating that Deputy Sturm's or Officer Bigham's training was inadequate with respect to the use of force. As support for this argument, Sheriff Muller provides the declaration of Sheriff Douglas A. Binnewies. Therein, Sheriff Binnewies maintains that all deputy sheriffs and jail officers employed by the County receive training at the academy, during field training programs, and through various class and seminars. (Doc. 37, Binnewies Decl. ¶¶ 5, 8.) Sheriff Binnewies maintains that the training for deputy sheriffs relating to the use of force meet or exceed the requirements set forth by the

California Commission on Peace Officer Standards and Training. (Id. ¶¶ 4, 6.) Sheriff Binnewies also asserts that the training for jail officers relating to the use of force meet or exceed the requirements outlined by the California Department of Corrections and Rehabilitation, Standards and Training for Corrections. (Id. ¶¶ 7, 9.)

In response, Mr. Guinn fails to argue or present any evidence that this training is inadequate in preventing the use of excessive force by peace officers. Because Mr. Guinn fails to establish a genuine issue of material fact in this regard, Sheriff Muller is entitled to summary judgment on Mr. Guinn's failure to train claim. See Canell, 143 F.3d at 1213-14.

### c. The County

Local governments are "persons" subject to liability under 42 U.S.C. § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). A local government, however, cannot be held liable under § 1983 on a theory of *respondeat superior*. Id. at 691. Rather, to impose liability on a local government under § 1983, a plaintiff must show that: (1) there was a violation of the plaintiff's constitutional rights; (2) the municipality had a policy, procedure, or custom; (3) the policy, procedure, or custom amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy, procedure, or custom was the moving force behind the constitutional violation. See Plumeau v. Sch. Dist. No. 40, 130 F.3d 432, 438 (9th Cir. 1997).

In moving for summary judgment, the County argues that it does not have a policy, procedure, or custom that served as the moving force behind any use of excessive force against Mr. Guinn. The County maintains that it has implemented policies such as General Order 87-4 regarding the proper use of force in the field and at the jail. (See Doc. 37, Binnewies Decl., Ex. A.) The County also maintains that all its peace officers are adequately trained in the use of force, are adequately supervised, and are subject to discipline when appropriate.

In his opposition, Mr. Guinn takes issue with the internal investigation that was conducted into the incident. Mr. Guinn maintains that the investigation was cursory and prematurely terminated. In particular, Mr. Guinn stresses that the detectives who were responsible for the investigation, Sergeants Sarno and Rumfelt, failed to speak with pertinent witnesses such as himself, Dr. Krueger, and medical staff at the local hospital. Mr. Guinn asserts that instead, the detectives simply gathered self-serving

statements from the jail officers who were involved in the incident.  Moreover, Mr. Guinn asserts that Sergeant Sarno abruptly ended her investigation upon instruction from her superiors.  In Mr. Guinn's view, "[s]uch conduct by the Sheriff's Office clearly indicates a desire to circumvent the policies and procedures issued in writing."  (Doc. 44, Pl.'s Opp'n, at 6.)

Mr. Guinn's evidence fails to show a genuine issue of material fact as to whether the County maintains a deficient policy, procedure, or custom with respect to the use of force.  In a *Monell* claim, there are three ways to demonstrate the existence of a municipal policy, procedure, or custom sufficient to give rise to liability under § 1983: (1) by showing an expressly adopted official policy or procedure that an employee acts pursuant to in committing the claimed constitutional violation; (2) by showing a longstanding or widespread practice or custom that an employee acts pursuant to in committing the claimed constitutional violation; or (3) by showing that an employee acted as a "final policymaker" in committing the claimed constitutional violation.  Delia v. City of Rialto, 621 F.3d 1069, 1081-82 (9th Cir. 2010); see Ulrich v. City & County of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002).  Here, Mr. Guinn's evidence regarding perceived deficiencies in the internal investigation fails to establish a genuine issue of material fact with respect to any of these three routes.

First, Mr. Guinn does not appear to argue that an express County policy is responsible for the excessive force that was allegedly used against him.  Mr. Guinn does not point to, nor challenge, any specific policy that has been adopted and maintained by the County.  See Waggy v. Spokane County Wash., 594 F.3d 707, 713-14 (9th Cir. 2010) (to challenge an express municipal policy or custom, the plaintiff must allege and prove that an express policy exists).

Second, Mr. Guinn fails to present evidence sufficient to show the existence of a longstanding or widespread municipal practice or custom.  It is true that "evidence of inaction – specifically, failure to investigate and discipline employees [despite] *widespread* constitutional violations – can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." Hunter v. County of Sacramento, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011) (emphasis added).  See also Gillette v. Delmore, 979 F.2d 1342, 1348-49 (9th Cir. 1992) ("A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which . . . errant municipal officials were not discharged or reprimanded.")  However, here, even

9

assuming that the internal investigation into Mr. Guinn's injuries was inadequate, Mr. Guinn fails to present evidence of *repeated* and *widespread* inadequacies in the Sheriff Department's investigations into alleged constitutional violations. Instead, Mr. Guinn simply asserts that the internal investigation pertaining to *his* incident was deficient. A reasonable juror could not infer from this single incident a longstanding municipal custom or practice of inadequate investigation and discipline. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom [under *Monell*] may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency[.]").

Third, Mr. Guinn fails to offer evidence sufficient to show that a final policymaker authorized or otherwise ratified the alleged constitutional violation. "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). In other words, the policymaker must make a "conscious, affirmative choice" to ratify the conduct in question. Gillette, 979 F.2d at 1347. "[I]t is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval [for ratification purposes]." Christie, 176 F.3d at 1239. See Gillette, 979 F.2d at 1348.

In his opposition, Mr. Guinn appears to argue that a final policymaker effectively ratified the conduct of Deputy Strum and Officer Bigham when the Sheriff's Department advised Sergeant Sarno to end her investigation. However, Mr. Guinn fails to offer evidence sufficient to support this theory. For example, Mr. Guinn provides no evidence as to why the Sheriff's Department instructed Sergeant Sarno to end her investigation, whether the entire investigation came to an end at that point (Sergeant Rumfelt was also investigating the matter), and most importantly, what findings and conclusions were ultimately reached (i.e., did the investigation ultimately clear Deputy Sturm and Officer Bigham of all wrongdoing?). In the absence of such evidence, a juror could not reasonably infer that the Sheriff's Department intended to ratify "the basis" of any conduct when it instructed one of its detectives to end her investigation into the matter.[4] Christie, 176 F.3d at 1239.

---

[4] It is notable that Sergeant Sarno's investigation lasted for more than two months before the "administration" advised her to end her investigation. (See Doc. 43, Ex. G, Sarno Depo. at 10:5-23; 21:14-19.)

10

In sum, Mr. Guinn fails to establish a genuine issue of material fact as to whether the County adopted and maintains a deficient policy, procedure, or custom regarding the use of force by its peace officers. This is fatal to Mr. Guinn's *Monell* claim. Accordingly, the County is entitled to summary judgment on this claim.

### 2. Inadequate Medical Care

With respect to his claims for inadequate medical care, Mr. Guinn sues (a) Deputy Sturm and Officer Bigham in their individual capacities for being deliberately indifferent to his serious medical needs; (b) Sheriff Brian in his individual capacity for failing to adequately supervise Deputy Sturm and Officer Bigham; and (c) the County for maintaining policies and procedures that failed to protect Mr. Guinn from the deliberate indifference of County officials.

#### a. Deputy Sturm and Officer Bigham

Claims for failure to provide care for serious medical needs, when brought by a detainee such as Mr. Guinn who has neither been charged nor convicted of a crime, are properly analyzed under the Due Process Clause of the Fourteenth Amendment. See Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003). The Due Process Clause of the Fourteenth Amendment "imposes, at a minimum, the same duty the Eighth Amendment imposes: persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002). Therefore, a detainee establishes a claim for inadequate medical care under the Fourteenth Amendment by showing that: (1) he had a serious medical need; and (2) an official responded to that need with deliberate indifference. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Gibson, 290 F.3d at 1187-88.

The issue raised in this case is whether Deputy Sturm or Officer Bigham acted with deliberate indifference to Mr. Guinn's breathing difficulties. Deputy Sturm and Officer Bigham argue that the undisputed facts demonstrate that they did not. According to the two defendants, the undisputed facts show that they timely recognized Mr. Guinn's need for medical attention and responded appropriately by transporting Mr. Guinn to the local hospital for emergency treatment. Deputy Sturm and Officer Bigham contend that if anything, their actions saved Mr. Guinn's life. After reviewing the evidence presented, the Court agrees.

A defendant acts with deliberate indifference to serious medical needs when he or she (1) has actual knowledge of a substantial risk of harm to the plaintiff's health and safety, yet (2) fails to take reasonable measures to abate the danger, (3) causing plaintiff harm. See Farmer v. Brennan, 511 U.S. 825, 847 (1994); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Here, even assuming that Deputy Sturm and Officer Bigham were actually aware at some point that Mr. Guinn faced a serious medical need, the record demonstrates that the defendants took reasonable measures to abate the danger to Mr. Guinn's health and safety.

The following facts are undisputed in this regard. Deputy Sturm and Officer Bigham left Mr. Guinn in the sobering cell around 1:30 a.m. (Doc. 33, Sturm Decl. ¶ 17.) Mr. Guinn did not have any difficulty breathing before he was placed in the sobering cell. (Doc. 32-1, Guinn Depo. at 45:21-46:4; 46:18-20.) Approximately fifteen minutes later, Officer Bigham checked-in on Mr. Guinn and was left with the impression that Mr. Guinn's breathing was "shallow." (Doc. 34, Bigham Decl. ¶ 17.) Officer Bigham reported her concerns regarding Mr. Guinn to her supervisors. (Doc. 32-4, Bigham Depo. at 17:24-18:8; 19:2-20:12.) After receiving clearance from her supervisors, Officer Bigham transported Mr. Guinn to the hospital at around 2:05 a.m. (Id.; Doc. 34, Bigham Decl., Ex. A.) Deputy Sturm met the group at the hospital and assisted Mr. Guinn into the hospital. (Doc. 32-3, Sturm Depo. at 40:18-42:22.) Mr. Guinn was admitted to the hospital by 2:25 a.m. and was under the care and observation of medical personnel thereafter. (See Doc. 32-5, Krueger Depo. at 41:13-16; 45:13-50:20.) In sum, Mr. Guinn was transported to the hospital and received treatment for his breathing difficulties within one hour of his initial symptoms.

In the face of these undisputed facts, Mr. Guinn fails to produce any evidence, or even a clear argument, showing how the response by Deputy Sturm and Officer Bigham to Mr. Guinn's breathing abnormalities was in any way deficient. From what the Court is able to glean from Mr. Guinn's brief opposition, it appears that Mr. Guinn simply argues that the defendants should have responded sooner. This argument is flawed in at least two critical respects.

First, the only suggestion that Mr. Guinn ever complained to jail officials about his breathing difficulties is Mr. Guinn's assertion that he pressed a speaker button inside the sobering cell and asked for help. (Doc. 32-1, Guinn Depo. at 46:21-47:3.) However, it is undisputed that there is *no* speaker

button or intercom in the sobering cell.[5]  (Doc. 51, Pl.'s Statement of Undisputed Facts, 51; Doc. 34, Bigham Decl. ¶ 10.)  Therefore, the Court gives no weight to Mr. Guinn's assertion that he attempted to alert jail officials to his medical needs at some earlier point.  See Scott v. Harris, 550 U.S. 372, 380 (2007) (in ruling on a motion for summary judgment, a court may disregard a version of the facts that is blatantly contradicted by the record).

Second, even assuming that jail officials could have responded sooner that they did, there is no evidence or indication that Mr. Guinn suffered any appreciable harm by the supposed delay in medical attention.  See Jett, 439 F.3d at 1096 (deliberate indifference requires a showing that some harm was caused by the indifference).  As noted above, Officer Bigham had Mr. Guinn transported to the local hospital within thirty minutes of Mr. Guinn's first symptoms.  Therefore, to the extent that Mr. Guinn argues that the defendants should have responded sooner, he is attempting to parse mere minutes.  Yet, there is nothing in the record demonstrating that mere minutes caused Mr. Guinn to suffer any harm.  When Mr. Guinn arrived at the hospital at the time he did, his vital signs and breathing were normal. (Doc. 32-5, Krueger Depo. at 48:11-49:7; 50:4-6.)  Mr. Guinn fell into respiratory distress only after medical personnel had examined him and only after he had already spent approximately thirty minutes at the hospital.

The undisputed facts therefore demonstrate that Deputy Sturm and Officer Bigham did not act with deliberate indifference to Mr. Guinn's serious medical needs because they reasonably responded to Mr. Guinn's breathing difficulties.  Accordingly, a reasonable trier of fact could not return a verdict in Mr. Guinn's favor based on the evidence presented.  Deputy Sturm and Officer Bigham are entitled to summary judgment on these claims.

### b. Sheriff Muller

Because the undisputed facts establish that there was no underlying constitutional violation for deliberate indifference to Mr. Guinn's serious medical needs, Sheriff Muller cannot be held liable for his alleged failure in supervising Deputy Sturm and Officer Bigham.  See Jackson, 268 F.3d at 653 (a supervisor cannot be held liable under § 1983 where no constitutional violation has occurred); Blyden v. Mancusi, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section

---

[5] The sobering cell did have a button that a person could press for water.  (Doc. 32-4, Bigham Depo. at 16:1-3.)

1983, there must have been an underlying constitutional deprivation."). Accordingly, Sheriff Muller is entitled to summary judgment on this claim.

### c. The County

Similarly, because there is no underlying constitutional violation for deliberate indifference to Mr. Guinn's serious medical needs, the County also cannot be held liable under *Monell* for allegedly maintaining a policy, procedure, or custom that amounts to deliberate indifference to serious medical needs. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("[N]either *Monell* . . . nor any of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm."); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights."). Accordingly, the County is entitled to summary judgment on this claim.

### 3. Qualified Immunity

Deputy Sturm and Officer Bigham maintain that they are entitled to qualified immunity with respect to Mr. Guinn's excessive force claims.[6] Qualified immunity shields government officials from liability for civil damages, insofar as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Cousins v. Lockyer, 568 F.3d 1063, 1069 (9th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield [public] officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Determining whether an official is entitled to qualified immunity requires a two-part analysis. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, a court must decide whether the facts alleged, when taken in the light most favorable to the plaintiff, show that the official's conduct violated a statutory or constitutional right. Id. Second, the court must determine whether the statutory or constitutional right

---

[6] The Court notes that Deputy Sturm, Officer Bigham, and Sheriff Muller argue that they are entitled to qualified immunity on all of Mr. Guinn's § 1983 claims. However, the Court has already determined that the only § 1983 claims to survive summary judgment are Mr. Guinn's excessive force claims against Deputy Sturm and Officer Bigham. Therefore, the Court need only address qualified immunity in the context of these claims.

14

was "clearly established." Id.  A right is "clearly established" in the context of qualified immunity if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted . . . or whether the state of the law [at the time of the violation] gave fair warning to the official[] that [his] conduct was unconstitutional."  Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (internal citation and quotation marks omitted).

Although it is often beneficial to address the two-party inquiry in the sequence outlined above, it is not mandatory.  Pearson, 555 U.S. at 236.  A court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first[.]"  Id.  A court may grant qualified immunity and dismiss a plaintiff's claims at any point the court answers either prong in the negative. See, e.g., Tibbetts v. Kulongoski, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassing the first prong and granting the defendants qualified immunity because the plaintiff's due process claim was not a clearly established right at the time of the alleged violation).

Here, Deputy Sturm and Officer Bigham maintain that they are entitled to qualified immunity by simply reiterating that no choke hold was ever applied against Mr. Guinn.  However, the Court has already determined that a genuine issue of material fact exists on this issue.  Accordingly, absent any argument by the defendants that Mr. Guinn does not have a clearly established right to be free from a choke hold under the circumstances presented, Deputy Sturm and Officer Bigham are not entitled to qualified immunity on Mr. Guinn's excessive force claims.

**B.    State Law Claims**

   **1.    Battery**

Mr. Guinn claims that Deputy Sturm and Officer Bigham committed battery against him when they placed him in a choke hold.  In the context of a peace officer's use of force, "[a] state law battery claim is [the] counterpart to a federal claim of excessive use of force[,]" and similar standards apply. Brown v. Ransweiler, 171 Cal. App. 4th 516, 527 & n.11 (2009).  See also Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1274 (1998) (applying the standards for a federal excessive force claim under § 1983 to a state law battery claim).  Accordingly, Mr. Guinn's state law battery claims against Deputy Sturm and Officer Bigham survive for the same reason his Fourth Amendment excessive force claims survive: there is a genuine issue of material fact as to whether Mr. Guinn was placed in a choke hold

during the booking process. As such, Deputy Sturm and Officer Bigham are not entitled to summary judgment on Mr. Guinn's claims for battery.

### 2. Gross Negligence

Mr. Guinn claims that Deputy Sturm and Officer Bigham responded to his medical needs with gross negligence. The elements for proving a state law claim for gross negligence in the context of a detainee's medical needs are similar to those of an Eighth Amendment deliberate indifference claim. Under California law, a public employee is not liable for injuries to prisoners caused by the employee's failure to provide medical care unless "the employee knows or has reason to know that the prisoner is in need of immediate medical care and [the employee] fails to take reasonable action to summon such medical care[.]" Cal. Gov. Code § 845.6.[7] As already explained above, even assuming Deputy Sturm and Officer Bigham had actual knowledge that Mr. Guinn's breathing condition required immediate medical attention, the undisputed facts show that the two defendants acted reasonably in securing Mr. Guinn appropriate medical care. Accordingly, Deputy Sturm and Officer Bigham are immune from liability pursuant to California Government Code Section 845.6 and are entitled to summary judgment on Mr. Guinn's gross negligence claims.

## IV. CONCLUSION

For all the reasons set forth above, this Court:

1. DENIES Deputy Sturm and Officer Bigham summary judgment with respect to Mr. Guinn's Fourth Amendment excessive force claims;

2. DENIES Deputy Sturm and Officer Bigham summary judgment with respect to Mr. Guinn's state law battery claims; and

3. GRANTS the defendants summary judgment with respect to all other claims. <u>IT IS SO ORDERED.</u>

 **Dated:    November 9, 2011**          <u>/s/ Lawrence J. O'Neill</u>
                                         <u>UNITED STATES DISTRICT JUDGE</u>

---

[7] The California Tort Claims Act defines "prisoner" in the context of Section 845.6 as "an inmate of a prison, jail, or penal or correctional facility." Cal. Gov. Code § 844. Under this definition, Mr. Guinn's detainee status qualifies him as a prisoner within the scope of Section 845.6