# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULO EUGENE GUINN, | CASE NO. 1:10-cv-00320-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT BE GRANTED** |
| v. | |
| J. STURM, et al., | **OBJECTIONS DUE: 21 DAYS** |
| Defendants. | (Doc. No. 72) |
| _____/ | |

## I. INTRODUCTION

On October 9, 2012, Defendants Deputy J. Sturm and Jail Officer A. Bigham ("Defendants") filed a motion to enforce the settlement agreement reached on November 10, 2011. (Doc. 72.) Plaintiff did not file an opposition to the motion. For the reasons set forth below, IT IS RECOMMENDED that Defendants' motion to enforce the settlement BE GRANTED.

## II. RELEVANT PROCEDURAL BACKGROUND

This case was filed on February 22, 2010, by Plaintiff Paulo Eugene Guinn ("Plaintiff") against Defendants J. Sturm, A. Bigham, the County of Mariposa, and Brian Muller, Mariposa

County Sheriff.[1]  A settlement conference was held before the undersigned on November 10, 2011, where the parties reached a settlement subject to the negotiation of Medi-Cal and Medicare liens. The parties memorialized the terms of the agreement in a written document that was signed by the parties and their counsel.  Following the settlement, several status conferences were conducted to discuss the status of the Medi-Cal and Medicare liens.  The Medicare lien was ultimately calculated to be $16,754.16, and the amount of the lien was included in the formal settlement agreement. However, after formal settlement agreement was drafted, Plaintiff informed his counsel that he was unwilling to sign it.  (Doc. 69.)

On October 5, 2012, Plaintiff's counsel filed a motion to withdraw as counsel of record for Plaintiff.  (Doc. 70.)  On October 9, 2012, Defendants filed a motion to enforce the settlement agreement. (Doc. 72.)  On November 28, 2012, the parties appeared for the hearings on Plaintiff's counsel's motion to withdraw and Defendants' motion to enforce the settlement.  (Doc. 79.) Following the hearings, the Court issued an order granting Plaintiff's counsel's motion to withdraw. (Doc. 80.)  On November 29, 2012, the Court ordered Defendants to file a supplemental brief regarding their motion to enforce the settlement and provided Plaintiff 45 days to retain other counsel, i.e., until January 16, 2013.  Additionally, Plaintiff's deadline to file an opposition to Defendants' motion to enforce the settlement was extended to January 25, 2013.

On January 25, 2013, Plaintiff file a motion for an extension of time to retain counsel and file an opposition to the motion.  (Doc. 85.)  Plaintiff was granted an extension until February 15, 2013, to retain new counsel.  (Doc. 85.)  Any opposition to Defendants' motion to enforce the settlement was to be filed no later than February 22, 2013.  (Doc. 85.)  As of the date of these Findings and Recommendations, Plaintiff has neither retained new counsel nor filed an opposition to Defendants' motion to enforce the settlement.

---

[1] On November 9, 2011, the Court granted Defendants' motion for summary judgment on all claims except Plaintiff's Fourth Amendment excessive force claim and Plaintiff's state law battery claim against Defendants Deputy Sturm and Officer Bigham. (Doc. 53, 16:17-22.)

2

## III.   DISCUSSION

**A.   Legal Standard**

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). To be enforced, the settlement must meet two requirements: (1) it must be a complete agreement, *id.* at 890 (citing *Azvagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983)); and (2) both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute, *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977). Summary enforcement is appropriate unless there is a dispute as to the existence or terms of the settlement agreement. *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 708 (9th Cir. 1989). An agreement to settle a federal case is a contract governed by the applicable state law. *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993) ("The interpretation of a settlement agreement is governed by principles of state contract law, . . . even where a federal cause of action is settled or released" (citations and quotation marks omitted)).

"Under California law, the intent of the parties determines the meaning of the contract." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (citing Cal. Civ. Code §§ 1636, 1638). The proper inquiry is the parties' objective intent, "that is, the intent manifested in the agreement and by surrounding conduct – rather than the subjective beliefs of the parties." *Id.* Therefore, if a party does not express his or her true intent as to the meaning of a material term of a settlement agreement, that subjective intent is irrelevant. *Id.* Moreover, when parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement. *Blix Street Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48 (2010).

California has a strong policy in favor of enforcing settlement agreements. *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357 (2007). A settlement agreement "must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." *Roden v. Bergen Brunswig Corp.*, 107 Cal. App. 4th 620, 625 (2003); *see* Cal. Civ. Code § 1636. When the agreement is in writing, "the intention . . . is to be ascertained from the writing alone, if possible."

3

*Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 559 (1999); *see* Cal. Civ. Code § 1639. "[C]ourts will not set aside contracts for mere subjective misinterpretation." *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1421 (1996). "A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." *Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618, 1622 (2006).

**B.    Analysis**

In this case, the parties executed a written settlement agreement on November 10, 2011. (Doc. 72-2, Exhibit A, p. 6-7.) The written agreement indicates that a "more formal Settlement and Release Agreement" would be prepared, but the November 10, 2011, writing sets forth the terms agreed to by the parties. The November 10, 2011, agreement is a hand-written document stating that the parties "hereby agree to fully settle [and] resolve any and all claims relating to Case No. 1:10-cv-00320-LJO-SKO filed in the United States District Court, Eastern District of California Fresno." (Doc. 72-2, p. 6.) Defendants agreed to (1) pay Plaintiff $35,000 and (2) waive the right to reimbursement of the funds they had already paid toward Plaintiff's medical bills. Plaintiff agreed that he was to be fully responsible for any Medicare and/or Medi-Cal liens, and that no settlement funds could or would be released to him unless and until the said liens had been resolved. Specifically, the November 10, 2011, writing stated that "[t]his settlement will be conditioned upon a release of lien or lien payoff statement by Medi[c]are and Medi-Cal. Plaintiff agrees to be fully responsible for any Medi[c]are and/or Medi-Cal liens and understands that no settlement funds can/will be released to him unless and until said liens have been resolved." (Doc. 72-2, p. 6.) Plaintiff agreed that he would not disclose the terms of the settlement to any third parties except as necessary to carry out the terms of the settlement. The agreement also states that "[t]he parties will prepare a more formal Settlement and Release Agreement hereafter." (Doc. 72-2, p. 7.) The document was signed by counsel for Defendants, Plaintiff's counsel, and Plaintiff. (Doc. 72-2, p. 7.)

The November 10, 2011, agreement set forth the parties' consideration for the performance required. Specifically, Defendants agreed to pay to Plaintiff $35,000 and agreed to waive the right to reimbursement of funds it had already paid toward Plaintiff's medical bills. Plaintiff agreed that

4

the settlement payment was conditioned upon a release of lien, and that the parties' agreement was to fully settle and resolve any and all claims relating to this case. Thus, the material terms of the settlement were set forth in the November 10, 2011, informal writing and the terms of the agreement are reasonably certain.

The fact that the parties anticipated that a more formal agreement would be drafted does not vitiate the binding nature of the settlement agreement reached or render the terms uncertain. In general, "[p]arties may engage in preliminary negotiations, oral or written, in order to reach an agreement. These negotiations ordinarily result in a binding contract when all of the terms are definitely understood, even though the parties intended that a formal writing embodying these terms shall be executed later." 1 Witkin, Summary of Cal. Law (10th ed 2005) § 133, p. 172 (citations omitted); *see also Blix Street Records, Inc.*, 191 Cal. App. 4th at 48.

This case is analogous to the facts of *Doi v. Halekulani*, 276 F.3d 1131 (9th Cir. 2002), where the Ninth Circuit affirmed a district court's order enforcing a parties' settlement agreement. In *Doi*, the district court was involved in facilitating settlement discussions, which resulted in settlement. *Id.* at 1134. Counsel for both the plaintiff and the defendant, as well as the plaintiff herself, came into open court to announce that the parties had agreed to settle the case and placed the terms of the settlement on the record. *Id.* Defense counsel summarized the settlement:

> . . . Halekulani Corporation will pay the sum of $15,000 to the plaintiff. The settlement draft will be made payable to Claire Doi and Charles Brower, her attorney. In exchange for that there will be a stipulation to dismiss the case with prejudice as well as a release and indemnity agreement executed by the plaintiff. In addition, the release agreement will specify that Ms. Doi will resign from her job with Halekulani [sic] effective upon the filing of the stipulation for dismissal with prejudice. She also agrees not to reapply to any related entities of Halekulani Corporation, and those entities will be listed and set forth in the release document. The release will also specify that there is a mutual confidentiality provision, which will be agreed upon by counsel, as well as a mutual non-disparagement agreement. There will be no admission of liability on the part of Halekulani Corporation or any defendant by virtue of this settlement and that will be specified in the release as well.
>
> Finally, the payment of $15,000 will also be memorialized by a Form 1099 issued by Halekulani, and we will agree to work with counsel for plaintiff in terms of drafting language with regard to the consideration of $15,000 and its applicability.

*Id*. The Court asked the plaintiff's counsel whether those terms were agreed to, and counsel responded affirmatively and that it was understood "that those are the terms of the settlement." *Id.* The Court also questioned Ms. Doi whether she agreed to those terms.

> THE COURT: Can I have you also, Ms. Doi, state that you do agree to these terms?
> PLAINTIFF: After I see the documents I –
> THE COURT: Well –
> PLAINTIFF'S COUNSEL: The terms are –
> THE COURT: The terms, as stated right now, do you agree to those?
> PLAINTIFF: I stated.
> THE COURT: You do agree?
> PLAINTIFF: Yeah.

*Id.*

The parties stipulated and agreed that payment and the stipulation to dismiss would be delivered to the judge's chambers by Friday, May 12 at 4:00 p.m. *Id.* at 1135. Counsel for the defendant, Halekulani, agreed to prepare settlement documents, including the stipulation to dismiss, memorializing the agreement entered into in open court. *Id.*

However, when May 12 arrived, no stipulation to dismiss was received by the court. *Id.* The court convened a telephonic conference with the parties, and counsel for both the plaintiff and defendant appeared. *Id.* The plaintiff's counsel stated that Ms. Doi had indicated she needed more time to review the documents. Counsel attempted to contact her, but Ms. Doi failed to respond to her attorney. *Id.* The defendant's counsel informed the court that, earlier that day, Ms. Doi had sent a letter to Halekulani that proposed new settlement terms – terms inconsistent with those placed on the record –which was unknown to the plaintiff's counsel. *Id.* The court invited Halekulani to file a motion to enforce the settlement if the plaintiff had failed to execute the settlement documents by the following Monday. *Id.* Ultimately, Halekulani filed a motion to enforce the settlement, and a hearing was held. *Id.* The plaintiff appeared at the hearing on her own behalf, without counsel, and requested a 30-day continuance in which to retain a new lawyer. *Id.* at 1136. She explained that she had not made any agreement in writing indicating that she wished to settle. The court explained that the oral agreement placed on the record was binding, but granted a continuance and set a new hearing date.

During the pendency of the motion, Ms. Doi hired a new attorney who filed an opposition to Halekulani's motion. *Id.* At the hearing, Ms. Doi's new lawyer insisted that the settlement

6

1  documents prepared by Halekulani were not, in fact, consistent with the agreement previously placed
2  on the record. *Id.* The court was not persuaded and granted Halekulani's motion to enforce the
3  settlement. *Id.*
4        On appeal, the Ninth Circuit affirmed the district court's order enforcing the settlement. Ms.
5  Doi again advanced her argument that the various terms of the written settlement agreement were
6  not among those terms agreed to in open court, specifically: (1) the list of Halekulani entities at
7  which Doi agreed not to work, and (2) the scope of the confidentiality agreement. The appellate
8  court rejected this argument, reasoning that both these provisions in the written agreement were in
9  "full accord" with the terms of the agreement stated in open court. Ms. Doi agreed in open court not
10 to reapply to *any* related entities of Halekulani; the written agreement merely "spell[ed] out these
11 entities." *Id.* at 1139. As to the mutual confidentiality clause, the parties had agreed in open court
12 that the language of the clause would be agreed upon by counsel. The appellate court noted that the
13 written agreement contained a very standard release clause, and "there [was] no reason to think that
14 it represents any overreaching by Halekulani." Further, plaintiff's attorney had confirmed at the
15 telephonic conference with the court that the written agreement was consistent with the terms of the
16 agreement placed on the record in open court. The court concluded that Ms. Doi had failed to show
17 that any of the terms of the written agreement prepared by Halekulani were inconsistent with the
18 terms of the agreement made on the record in open court.
19       Here, both Plaintiff and his counsel signed the November 10, 2011, agreement, indicating
20 express assent to the terms in the writing. In relevant part, the informal agreement provided as
21 follows:

> Plaintiff, Paulo Eugene Guinn, and Defendants, J. Sturm, A. Bingham, Brian Muller, and County of Mariposa, hereby agree to fully settle & resolve any and all claims related to Case No. 1:10-cv-00320-LJO-SKO filed in the United States District Court, Eastern District of California, Fresno, on the following terms . . .
>
> The parties will prepare a more formal Settlement and Release Agreement hereafter.

26 (Doc. 72-2, p. 7.)
27       Plaintiff expressly indicated his intent to be bound by the terms of the November 10, 2011,
28 agreement by signing the document. This is similar to *Doi* where the plaintiff manifested her intent

to be bound by the terms of the settlement by responding in open court that she knew the terms and agreed to them. Additionally, Plaintiff has presented no argument how terms of the formal written agreement differ from those of the November 10, 2011, informal written agreement that would justify his refusal to execute the formal agreement. While the formal agreement provides a standard release agreement that the November 10, 2011, agreement did not, the parties acknowledged in the November 10, 2011, agreement that the "parties will prepare a more formal Settlement and Release Agreement hereafter." (Doc. 72.-2, p. 7.)

The formal agreement provided the following release and discharge:

> 1.1   In consideration of the payments set forth in Section 2, Plaintiff hereby completely releases and forever discharges Defendant, its Departments, their agents, servants and associates from any and all past, present or future property damage claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which Plaintiff now has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of the Complaint and all related pleadings, including without limitation, any and all unknown claims for property damage by plaintiff, which have resulted or may result from the alleged acts or omissions of the Defendant. This Release on the part of the Plaintiff shall be a fully binding and complete settlement between the Plaintiff and the Defendant, their assigns and successors, save only the executory provisions of this Settlement Agreement.
>
> 1.2   This release and Discharge shall also apply to Defendant's past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons firms, or corporations with whom any of the former have been, are now or may hereafter be affiliated.
>
> 1.3   This Release, on the part of the Plaintiff, shall be a fully binding and complete settlement agreement between the Plaintiff and the Defendant, their heirs, assigns, and successors.

(Doc. 72-2, p. 19-20.) This is standard language and is clearly within the contemplation and understanding of the parties in that the November 10, 2011, writing expressly stated that a more formal settlement and release agreement would be executed. Further, like the confidentiality clause in *Doi*, the release contained in the formal agreement in this case contains standard language and does not appear to contain any "overreaching" on the part of Defendants. *Doi*, 276 F.3d at 1139 ("the written agreement contains a very standard release clause, and there is no reason to think that it represents any overreaching by Halekulani.").

The formal writing also provides that Plaintiff will dismiss the action with prejudice. (Doc. 72-2, p. 21.) In the November 10, 2011, informal writing, the parties agreed to "fully settle [and] resolve any and all claims related to Case No. 1:10-cv-00320-LJO-SKO filed in the United States District Court, Eastern District of California, Fresno . . . " It is clear that by agreeing that the settlement agreement would "fully settle & resolve any and all claims" as set forth in the November 10, 2011, writing, the parties intended that the action would be dismissed with prejudice. Certainly Defendants would not have agreed to pay any settlement amount had Plaintiff been unwilling to resolve the claims finally and permanently – Plaintiff's full and final release of his claims was an essential component of his consideration for the agreement. *See Roden*, 107 Cal. App. 4th at 625 (a settlement agreement "must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting"); *see also* Cal. Civ. Code § 1636. The terms of the two writings are not in any discord that would justify Plaintiff's refusal to execute the formal agreement.

Although provided additional time to do so, Plaintiff has not retained new counsel or filed any statement in opposition to Defendants' motion to enforce the settlement. The Court finds that the parties' November 10, 2011, written agreement sets forth the material terms of the settlement, and the parties executed the document manifesting their intent to be bound by its terms. For these reasons, the Court RECOMMENDS that Defendants' motion to enforce the settlement be GRANTED.

### IV.  CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to enforce the settlement be GRANTED;
2. Defendants be ordered to make payment to Plaintiff as provided in the parties' settlement agreement;
3. Defendants be ordered to submit a statement establishing when and to whom the settlement payment was made; and
4. Once Defendants have provided a statement establishing that payment has been made, the action be dismissed with prejudice.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 7, 2013**                    /s/ Sheila K. Oberto
                                              UNITED STATES MAGISTRATE JUDGE